UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAM SOLOMON, TALAL SOLIEMAN, and ABDULLAH SOLIEMAN )<br>)<br>)<br>Plaintiffs, )<br>v. )<br>)<br>STEVE SPALITTA, DAVID GAUTREAU, and )<br>OFFICER A of the Louisiana State Alcohol and )<br>Tobacco Control, Individually; KEITH )<br>LANDINE, Individually, FRANKLIN SUPPLY, )<br>INC., a Louisiana Corporation, )<br>)<br>Defendants. ) | Case No. 05 C 6649<br><br>Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

Sam Solomon, Talal Solieman, and Abdullah Solieman ("Plaintiffs") are two brothers and their father, respectively, from an Arab family in the business of selling retail tobacco products. Plaintiffs bring this action under 42 U.S.C. §§ 1983, 1985(3) based on Defendants' alleged conspiracy to violate their rights against unreasonable search and seizure, their substantive due process rights, and their equal protection rights guaranteed under the United States Constitution. Plaintiffs assert these causes of action against Steve Spalitta, David Gautreau, and Officer A of the Louisiana State Alcohol and Tobacco Control, as well as the Louisiana Corporation Franklin Supply, Inc. and its owner, Keith Landine (collectively, "Defendants").

Defendants Spalitta and Gautreau have moved to dismiss Plaintiffs' Complaint on various grounds under Rules 12(b)(1), (b)(5) and (b)(6), or alternatively to transfer the case to the United States District Court for the Middle District of Louisiana. Defendants Landine and Franklin Supply, Inc. have moved to dismiss Plaintiffs' Complaint for lack of personal jurisdiction and improper

venue, or alternatively to transfer the case. Because this Court is not a permissible venue for this action, the case is transferred to the Middle District of Louisiana – an appropriate venue for the action – pursuant to 28 U.S.C. § 1406(a).

**Plaintiffs' Allegations**

In early February 2004, Plaintiff Talal Solieman entered into a sales agreement with Defendant Keith Landine, owner of Franklin Supply, Inc., to purchase 3,680 cartons of cigarettes. *See* Plaintiffs' Complaint ("Compl."), ¶ 7. These cigarettes were purchased to replace a large quantity of cigarettes that were stolen from Discount Cigarettes, a Baton Rouge, Louisiana store owned by Plaintiff Sam Solomon. *See* Compl., ¶¶ 4, 7. On the morning of February 17, 2004, the cartons of cigarettes were delivered to Discount Cigarettes. *See* Compl., ¶ 9. A man who presented himself as Sam Solomon, but was identified later by the Franklin Supply delivery person to be his brother, Talal Solieman, accepted delivery. *See* Compl., Ex. A, 26.

The parties dispute the agreed upon payment arrangement. Plaintiffs claim that they were obligated to pay Landine within ten days of delivery, while Landine claims that payment was to be made at the time of delivery. *See* Compl., ¶ 8 and Ex. A, 21. Landine claims that a salesperson for Franklin Supply, J.D. Theriot, was scheduled to accept payment from Plaintiffs at the time of delivery, but he was delayed because of traffic. *See* Compl., Ex. A, 3. Plaintiffs contend that Landine decided, contrary to their agreement, that he wanted immediate payment and had Theriot visit Plaintiffs' store to demand such payment on the evening of February 17, 2004. *See* Compl., ¶ 10. In either event, Theriot did not meet with Plaintiffs, and no payment was made. Plaintiffs then moved the cigarettes to a storage facility that had been rented by Salah Abushawish, brother-in-law of Sam and Talal, for fear that the cigarettes may be stolen if left at Discount Cigarettes. *See* Compl.,

¶ 12.

Having not received payment for the delivered cigarettes, Landine filed a criminal complaint in the local sheriff's office in Louisiana against Sam Solomon, owner of Discount Cigarettes. *See* Compl., ¶ 13. After an investigation, a detective from the local Sheriff's department found no probable cause to support criminal charges. *See* Compl., ¶ 14. Thereafter, however, Landine brought the case to the Baton Rouge office of the State of Louisiana, Department of Revenue and Taxation's Office of Alcohol and Tobacco Control ("OATC"). *See* Compl., ¶ 15. Landine then conspired with Defendants Steve Spalitta and David Gautreau, both OATC agents, to claim that the cigarettes had been stolen by Plaintiffs and that the proceeds from sale of the stolen cigarettes were used to fund terrorism. *See* Compl., ¶16. Through the OATC investigation, cigarettes located at Market Plus, a store in Pride, Louisiana owned by Plaintiff Abdullah Solieman, were seized due to Abdullah's inability to produce invoices for the cigarettes, and his admission that the cigarettes came from Sam's store (Discount Cigarettes). *See* Compl., Ex. A, 22. During the search of Market Plus, OATC agents including Defendants Spalitta and Gautreau drove customers away and did not allow employees to enter or leave the store. *See* Compl., ¶ 20. Agents Spalitta and Gautreau then forced Abdullah to bring them to his house, where they entered without a search warrant. *See* Compl., ¶ 23. In addition, Defendants Spalitta and Gautreau obtained an arrest warrant for Plaintiff Sam Solomon, and arrested him on February 20, 2004. *See* Compl., ¶ 17.

In attempting to contact Plaintiff Talal Solieman, Defendant Gautreau called Solieman's cell phone. *See* Compl., Ex. A, 22. Gihan Moursy, Talal Solieman's girlfriend, answered the phone and informed Gautreau that she and Solieman were en route to Chicago. *Id.* Moursy also informed Agent Gautreau that the cigarettes in question were located in a Baton Rouge storage facility, and

provided directions to said facility. *See* Plf.'s Comp, Ex. A, 23. Moursy provided this information under threat that her green card would be taken away if she did not cooperate. *See* Compl., ¶ 24. Based on this information, OATC visited the storage facility and confirmed via conversations with Ivy Elliot, the owner of the facility, that Sam's and Talal's brother-in-law rented the storage unit in question. *See* Compl., Ex. A, 23. OATC then obtained a search warrant for the storage unit and seized the cigarettes contained within. *See* Compl., ¶ 25. On the same day, Sam Solomon's father, Abdullah, bailed him out of jail. *See* Compl., ¶ 26.

Two days later, Plaintiff Abdullah Solieman called Defendant Gautreau and indicated that he would return the cigarettes in question. *See* Compl., ¶ 27. Although they already had seized said cigarettes from the storage unit, Defendants accepted Solieman's offer in order to ensure that Plaintiff intended to return the correct cigarettes. *See* Compl., Ex. A, 24. When Plaintiffs Abdullah Solieman and Sam Solomon arrived at the storage facility, agents confronted them and brought them to headquarters for questioning. *Id.* During the questioning, Plaintiffs were accused of being "'Arab terrorist [sic] who were using the money from stolen cigarette [sic] to fund terrorists in Afghanistan and Osama Bin Laden,' or words to that effect." Compl., ¶ 28. They also were treated roughly and the agents made disparaging remarks about Arabs. *See* Compl., ¶¶ 29, 30. Based on the information gathered to this point, Sam Solomon was arrested. *See* Compl., Ex. A, 25. According to an Agent Kelly who was present at the correctional facility at the time of the arrest, Sam Solomon "stated he was 'Glad' that 9/11 had occurred" and, when "asked for the name and address of his closest relative . . . he stated 'Osama Bin Ladin' and gave a cave number in Afghanistan as an address." Compl., Ex. A, 25. Several days later, on March 12, 2004, OATC agents returned to Discount Cigarettes and seized the remaining inventory, along with some financial documents. *See* Compl.. Ex. A, 28.

OATC's investigative report concludes that the financial statements show that Discount Cigarettes ordered over $243,000 in product during a two-month period, but that "there are no financial records to account for the money or the product." Compl., Ex. A, 30.

The same body of facts which led to the arrest of Sam Solomon also led to an arrest warrant being issued for Talal Solieman on March 3, 2004. *See* Compl., ¶ 37. Spalitta and Gautreau entered this warrant into the National Crime Information Center ("NCIC"), and Solieman was arrested in Lombard, IL on March 10, 2004. *See* Compl., Ex. A, 25, ¶ 39. Spalitta and Gautreau had informed law enforcement officials in Illinois of the grounds on which Talal was being sought. Upon arrest, officials from Homeland Security, the FBI, and other Illinois law enforcement agencies all interrogated Talal. *See* Compl., ¶¶ 38, 40. After spending sixteen days in an Illinois jail, Talal was extradited to Louisiana on March 26, 2004. *See* Compl., ¶ 41. Defendants did not travel to Illinois to take part in the interrogation or extradition. *See* Compl., Ex. A, 28.

A preliminary hearing was held regarding the criminal charges brought against Plaintiffs, and on November 22, 2004 all charges were dismissed due to a lack of probable cause. *See* Compl., ¶ 42. Plaintiffs now bring this action in the United States District Court for the Northern District of Illinois seeking relief for violation of their constitutional rights under 42 U.S.C. ¶¶ 1983, 1985(3).

## Discussion

A civil action may be brought only in a district court where personal jurisdiction over the defendants exists and venue properly lies. *See Leroy v. Great Western United Corp.*, 443 U.S. 173, 180 (1978) (stating that personal jurisdiction "goes to the court's power to exercise control over the parties"); 28 U.S.C. § 1391 (stating that a civil action may only be brought in a district where venue appropriately lies). A plaintiff has the burden of demonstrating the existence of personal jurisdiction

over the defendants and that venue in a district is proper. *See Steel Warehouse of Wisconsin v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998) (personal jurisdiction); *Gwin v. Reynolds & Reynolds Co.*, 2001 WL 775969, at *1 (N.D. Ill. 2001) (venue). In determining personal jurisdiction and venue, the Court must view all allegations and evidence in the light most favorable to the plaintiff. *See RAR, Inc. v. Turner Diesel*, 107 F.3d 1272, 1275 (7th Cir. 1997); *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987).

Viewing the evidence in the light most favorable to Plaintiffs, they have not established that the Northern District of Illinois is a proper venue for this action under 28 U.S.C. § 1391. It also is questionable whether this Court has personal jurisdiction over Defendants. Nevertheless, because a court has the authority to dismiss or transfer a case under § 1406(a) regardless of whether the court has personal jurisdiction over the defendants, this Court will not engage in the academic exercise of determining personal jurisdiction. *See* 28 U.S.C. § 1406(a); *Goldlawr v. Heiman*, 369 U.S. 463, 465 (1962) ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases . . . whether the court in which it was filed had personal jurisdiction over the defendants or not"). In deciding whether dismissal or transfer is the appropriate disposition, a court must exercise its discretion to determine which option will satisfy the interest of justice. *See Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986). Exercising its discretion, the Court finds that justice requires that this action be transferred to the correct venue, the Middle District of Louisiana, pursuant to 28 U.S.C. § 1406(a).

**I.    The Northern District of Illinois is not a permissible venue for this action**

Federal jurisdiction over the instant case derives from the subject matter of the §§ 1983, 1985(3) claims, and is therefore not based upon diversity of citizenship. Where federal jurisdiction

over a matter is not based upon diversity of citizenship, there are three possible grounds for venue:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). None of these grounds is satisfied here. Consequently, the Northern District of Illinois is not a permissible venue for this action.

First, Plaintiffs do not allege or otherwise assert that Defendants reside in the Northern District of Illinois. *See Gwin v. Reynolds & Reynolds Co.*, 2001 WL 775969, at *1 (N.D. Ill. 2001) (stating that Plaintiffs bear the burden of proving venue). Further, Defendants affirmatively state that they do not reside in the Northern District of Illinois. *See* Spalitta and Gautreau's Memorandum in Support of Motion to Dismiss, 4; Memorandum in Support of Landine and Franklin Supply's Motion to Dismiss, 2.

Second, the substantial portion of events and omissions giving rise to the claim did not occur in the Northern District of Illinois. The transaction between Plaintiffs and Defendant Landine occurred in Louisiana, as did the subsequent investigation of Plaintiffs by OATC. The claims of Sam Solomon and Abdullah Solieman have no connection to Illinois whatsoever, as they were both investigated, interrogated, and, in Solomon's case, arrested in Louisiana. The search of Plaintiffs' stores, domiciles, and storage unit, the seizure of Plaintiffs' cigarettes, and the alleged violent treatment of Plaintiff Sam Solomon all occurred in Louisiana. Talal Solieman also was investigated in Louisiana, though his arrest and some parts of his interrogation were performed in Illinois due to the fact that he was here when a warrant was issued for his arrest. Considering all of the events that

give rise to Plaintiffs' claims, it cannot be said that the arrest, interrogation, and sixteen day detention of Talal Solieman in the Northern District of Illinois comprise "a substantial part" of the events at issue.

Third, none of the Defendants may be found in the Northern District of Illinois. Defendants are based in Louisiana and could not be found in Illinois either currently or during the events on which the claim is based. Additionally, there is another district in which this action may be brought – the Middle District of Louisiana.

## II. The Middle District of Louisiana is a permissible venue for this action

The Middle District of Louisiana is an appropriate venue for this action because that is where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). The entire OATC investigation relating to Plaintiffs was conducted in the Middle District of Louisiana, and all related searches and seizures took place there as well. The only events to occur outside of the Middle District of Louisiana were the arrest of Talal Solieman, a portion of his interrogation, and sixteen days of his incarceration while awaiting extradition. The claims of Plaintiffs Sam Solomon and Abdullah Solieman are based entirely on events that occurred within the Middle District of Louisiana, and the investigation of Talal Solieman was conducted there as well. When all of the events relevant to Plaintiffs' claims are considered together, it is apparent that the "substantial part" of these events took place in the Middle District of Louisiana.

## III. Transfer of Venue Pursuant to 28 U.S.C. § 1406(a)

When a complaint is filed in a district where venue does not lie, 28 U.S.C. § 1406(a) governs: "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in

which it could have been brought." 28 U.S.C. § 1406(a). Given that the case could have been brought in the Middle District of Louisiana, the relevant question is whether the case should be dismissed or, if in the interest of justice, transferred. A Court has "broad discretion to grant or deny a motion to transfer the case" under § 1406(a)'s interest of justice standard. *Cote*, 796 F.2d at 985.

Dismissal traditionally is reserved for cases where the plaintiffs' initial choice of venue is an obvious, elementary mistake. *See Continental Insurance Company v. M/V Orsula*, 354 F.3d 603, 608 (7th Cir. 2003) (dismissing a case because none of the events relevant to the complaint occurred in the district where it was filed); *Cote*, 796 F.2d at 985 (dismissing a case because a forum selection clause required that it be filed in another district). The errant choice of venue in this case, however, does not rise to such an obvious nature that dismissal is required. There was no contractual provision requiring the claim to be brought in a certain district, nor did *all* of the events relevant to the complaint occur in the same district. Some of the events relevant to Plaintiffs' claims occurred in the Northern District of Illinois (though not "a substantial part" of these events), and Plaintiffs did present a theory which, had it been accepted by the Court, could have established this District as an appropriate venue. Plaintiffs' filing in the Northern District of Illinois is not such an obvious error that dismissal is warranted.

Finally, Plaintiffs contend that it will not be possible for them to receive a fair trial in Louisiana because of prejudice against Arab Muslims, but no evidentiary support is offered for this claim. The existence of such widespread bias throughout an entire state is not an assumption that this Court will accept. The attorneys for both parties can assemble an impartial jury through use of the voir dire process regardless of the forum. Therefore, justice requires that this action be transferred to the correct venue, the Middle District of Louisiana, pursuant to 28 U.S.C. § 1406(a).

9

## CONCLUSION AND ORDER

This Court is not a permissible venue for this action. Therefore, pursuant to 28 U.S.C. § 1406(a), the Court orders this matter transferred to the Middle District of Louisiana in the interest of justice. All other issues are left for adjudication in the appropriate venue. Wherefore, Defendants' Motions are granted in part and denied in part.

So ordered.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: July 26, 2006